**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DEMOCRACY FOR THE ARAB WORLD NOW, INC., d/b/a DAWN, TAXPAYER ALLIANCE AGAINST GENOCIDE, TARIK KANAANA, and WILLIAM DOARES,

Plaintiffs,

-v-

DONALD J. TRUMP, in his official capacity as President of the United States; U.S. DEPARTMENT OF STATE; MARCO RUBIO, in his official capacity as Secretary of State; U.S. DEPARTMENT OF THE TREASURY; SCOTT BESSENT, in his official capacity as Secretary of the Treasury; U.S. DEPARTMENT OF JUSTICE; TODD BLANCHE, in his official capacity as Attorney General; OFFICE OF FOREIGN ASSETS CONTROL; and BRADLEY T. SMITH, in his official capacity as Director of the Office of Foreign Assets Control,

Defendants.

No. 26 Civ. 5957 (JMF)

**SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR EXPANDED PERMANENT INJUNCTIVE RELIEF AND, IN THE ALTERNATIVE, FOR A PRELIMINARY INJUNCTION ON THEIR APA CLAIM**

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2689/2713/2768
Email: danielle.marryshow@usdoj.gov
mark.osmond@usdoj.gov
kamika.shaw@usdoj.gov

DANIELLE J. MARRYSHOW
MARK OSMOND
KAMIKA S. SHAW

Assistant United States Attorneys
– Of Counsel –

**TABLE OF CONTENTS**

**PAGE**

ARGUMENT ........................................................................ 1

I. Plaintiffs Should Not Have Received Any Relief on Their First Amendment Claims ....... 1

II. Plaintiffs Are Not Entitled to Facial Relief on Their First Amendment Claims ................ 4

III. *CASA* Forecloses the Universal Relief Sought by Plaintiffs ........................................ 6

IV. Plaintiffs' APA Claim Cannot Form the Basis for Broader Relief ................................ 10

CONCLUSION ........................................................................ 10

# TABLE OF AUTHORITIES

**PAGE(s)**

**Cases**

*Church of Am. Knights of the Ku Klux Klan v. Kerik*,
356 F.3d 197 (2d Cir. 2004) ....................6

*City of N.Y. v. Mickalis Pawn Shop, LLC*,
645 F.3d 114 (2d Cir. 2011)....................12

*Dickinson v. Trump*,
174 F.4th 634 (9th Cir. 2026) ....................13

*Gen. Media Commc'ns, Inc. v. Cohen*,
131 F.3d 273 (2d Cir. 1997) ....................10

*Holder v. Humanitarian Law Project*,
561 U.S. 1 (2010) ....................5

*Initiative v. Trump*,
510 F. Supp. 3d 198 (S.D.N.Y. 2021)....................12

*John Doe No. 1 v. Reed*,
561 U.S. 186 (2010) ....................8, 9

*L.A. Press Club v. Noem*,
171 F.4th 1179 (9th Cir. 2026) ....................13

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024) ....................8

*Regan v. Wald*,
468 U.S. 222 (1984) ....................7

*Rona* v. Trump,
797 F. Supp. 278 (S.D.N.Y. 2025)....................5, 11

*Smith v. Trump*,
791 F. Supp. 3d 90 (D. Me. 2025)....................12

*Smith v. Trump*,
No. 25 Civ.158 (JAW), 2026 WL 2905302 (D. Me. Sept. 28, 2026)....................14

*Soundboard Ass'n v. FTC*,
888 F.3d 1261 (D.C. Cir. 2018)....................14

*TikTok Inc. v. Garland*,
604 U.S. 56 (2025) ..........5

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ..........11, 12, 13

*Vincenty v. Bloomberg*,
476 F.3d 74 (2d Cir. 2007) ..........6

*Winter v. NRDC, Inc.*,
555 U.S. 7 (2008) ..........11

**Statutes**

18 U.S.C. § 2339B ..........5

22 U.S.C. § 7421(5) ..........7

50 U.S.C. § 1705(a) ..........10

**Rules**

Fed. R. Civ. P. 65(a)(2) ..........5

**Other Authorities**

Exec. Order No. 13,928, 85 Fed. Reg. 36,139 (June 11, 2020) ..........12

Exec. Order No. 14,203, 90 Fed. Reg. 9369 (Feb. 6, 2025) ..........passim

Press Statement, Antony J. Blinken, Secretary of State, U.S. Dept. of State, *The United States Opposes the ICC Investigation into the Palestinian Situation* (Mar. 3, 2021) ..........4, 5

Press Statement, Antony J. Blinken, Secretary of State, U.S. Dept, of State, *Warrant Applications by the International Criminal Court* (May 20, 2024) ..........4, 5

Defendants (the "Government") respectfully submit this memorandum of law pursuant to the Court's October 20, 2026 Order (Dkt. No. 42), which authorized supplemental briefing on the scope of any permanent injunctive relief given the Court's October 13, 2026 Opinion and Order granting Plaintiffs preliminary relief (Dkt. No. 40 ("Opinion" or "Op.")), and in response to Plaintiffs' October 23, 2026 supplemental brief (Dkt. No. 44 ("Pl. Supp. Br.")).

## ARGUMENT

### I. Plaintiffs Should Not Have Received Any Relief on Their First Amendment Claims

While the Government agrees that there are no factual disputes in the existing record pertaining to Plaintiffs' First Amendment claim and does not oppose consolidation under Federal Rule of Civil Procedure 65(a)(2) for that claim (Dkt. No. 41), the Government reserves its appellate rights and for the following reasons respectfully disagrees with this Court's decision concluding that Plaintiffs are likely to succeed on their as-applied challenge.

First, the Government respectfully submits that the Court erred in determining that the Services Prohibition is "content based because it 'regulates speech based on its function or purpose,'" *DAWN* Opinion at 18–19 (quoting *Rona v. Trump*, 797 F. Supp. 3d 278, 288–289 (S.D.N.Y. 2025)) and, in turn, that strict scrutiny applies here. In making this determination, the Court relied on *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010). *Id*. However, this case is distinguishable from *Holder*. In *Holder*, 18 U.S.C. § 2339B, the challenged statute regulated communications based on their content on the face of the statute. Pursuant to the statute at issue in *Holder*, Plaintiff's ability to engage in speech with certain parties "depend[ed] on what they sa[id]." *Holder* 561 U.S. at 27. That is not the case here. Executive Order 14,203's prohibitions are, on their face, based on the recipient, *i.e*, the designated person, and not the content of any speech. As such, the standard of review that properly applies is intermediate scrutiny. *TikTok Inc.*

*v. Garland*, 604 U.S. 56, 70 (2025) ("Content-neutral laws, in contrast, are subject to an intermediate level of scrutiny because in most cases they pose a less substantial risk of excising certain ideas or viewpoints from the public dialogue.") (internal quotation marks omitted); *Vincenty v. Bloomberg*, 476 F.3d 74, 84 (2d Cir. 2007) ("The appropriate standard by which to evaluate the constitutionality of a content-neutral regulation that imposes only an incidental burden on speech is the intermediate level of scrutiny.").[1]

The Government also respectfully submits that the Court erred in concluding that Executive Order 14,203 would not satisfy strict scrutiny. Even if, as the Court concluded, strict scrutiny applied, Executive Order 14,203 satisfies that standard. Executive Order 14,203 is narrowly tailored to compelling national security and foreign policy interests. The Government has a compelling interest in shielding U.S. personnel and personnel from allied nations from arrest, investigation, detention, or prosecution by the ICC, where the United States and its allies have not consented to ICC jurisdiction. The Court's conclusion otherwise rests, in part, on its determination that Executive Order 14,203 is overinclusive because it "bars a wider array of speech-related services than necessary to achieve its interest." *DAWN* Opinion at 20.

The Government maintains, as it explained in its opposition to Plaintiffs' motion for a preliminary injunction, that Executive Order 14,203 is narrowly tailored. Dkt. No. 33, ("Gov't Opp.") at 18–20. Plaintiffs contend that the Government has not explained why alternatives to speech regulation are inadequate. Pl. Supp. at 8. First, the Government rejects the assertion that

---

[1] Even if Plaintiffs were correct in asserting that Executive Order 14, 203 impacts speech, the effect is, at best, incidental. It aims not to disadvantage or prohibit a particular viewpoint, but rather to shield U.S. personnel and allies from ICC investigation, arrest or prosecution without consent. Where, as is the case here, a regulation poses no more than an "incidental burden on the exercise of free speech," it "does not implicate the First Amendment." *Church of Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 209 (2d Cir. 2004).

Executive Order 14,203 imposes speech regulation. Further, the Government reiterates that the conduct of foreign policy is entrusted to the political branches of government, rather than the judiciary. *See* *Regan v. Wald*, 468 U.S. 222, 242 (1984) ("Matters relating to the conduct of foreign relations . . . are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.") (internal quotation marks and citations omitted). Nonetheless, the Government notes that the United States has engaged in alternative strategies to achieve its foreign policy objectives vis-à-vis the ICC, including by repeatedly voicing objection in public fora to the ICC's purported exercise of jurisdiction over U.S. or allied nationals. *See* Press Statement, Antony J. Blinken, Secretary of State, U.S. Dept. of State, *The United States Opposes the ICC Investigation into the Palestinian Situation* (Mar. 3, 2021); Press Statement, Antony J. Blinken, Secretary of State, U.S. Dept, of State, *Warrant Applications by the International Criminal Court* (May 20, 2024). These efforts have not deterred the ICC.

The Court noted that, unlike *Holder*, the Government offered no record evidence to support the foreign policy interests implicated by the Executive Order 14,203. However, record evidence in the form of congressional findings and statements by the executive branch, which the Government cited in its opposition to Plaintiffs' motion for a preliminary injunction, does support the governmental interests as issue here. *See* 22 U.S.C. § 7421(5), (8), (9), (11) (stating that "[t]he United States will not recognize the jurisdiction of the International Criminal Court over United States nationals" based on concerns about "the risk of international criminal prosecution" against U.S. personnel); 90 Fed. Reg. 9369, 9369 (Feb. 6, 2025) (statement by the Executive Branch noting that recent ICC investigations of U.S. personnel and its allies "set a dangerous precedent" and "endanger(ed) current and former United States personnel" by "exposing them to harassment, abuse, and possible arrest." These ICC activities "threaten[ed] to infringe upon the sovereignty of

the United States and undermine[d] the critical national security and foreign policy work of the United States Government" and its allies). These statements provide persuasive evidence in support of the weighty interests the Government seeks to safeguard via Executive Order 14,203.[2] In light of the foregoing, the Government maintains that Plaintiffs did not demonstrate that they face irreparable harm as a result of Executive Order 14,203 or any designations pursuant to it. Further, the Government maintains that the national security and foreign policy interests here weigh in favor of declining any injunctive relief.

## II. Plaintiffs Are Not Entitled to Facial Relief on Their First Amendment Claims

Following the Court's denial of a universal preliminary injunction, Plaintiffs now attempt to refashion their facial challenge as a "hybrid" facial and as-applied challenge to resuscitate their failed facial claim. The Court should reject that effort. According to Plaintiffs, their facial challenge seeks to invalidate the sanctions "only as applied to protected speech and association." Pl. Supp. Br. at 5. They argue that this "hybrid" claim is somehow subject to a different standard than "traditional" facial claims. Specifically, Plaintiffs assert that *John Doe No. 1 v. Reed*, 561 U.S. 186 (2010), rather than the higher standard articulated in *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), which the Court applied in rejecting Plaintiffs' facial challenge, governs the Court's analysis. But despite Plaintiffs' attempt to reframe their claims in an effort to subject them to a

[2] Contrary to Plaintiffs' assertions, the Government has not conceded that the Rome Statute confers jurisdiction over U.S. or Israeli nationals or that alleged activity by U.S. or Israeli nationals falls within the ICC's remit. Pl. Supp. Br. at 7. Rather, the United States has maintained the objection reflected in E.O. 14203 to the ICC's purported exercise of jurisdiction over U.S. or allied nationals, including in relation to the court's investigations in the Afghanistan and Palestinian situations. *See, e.g.*, Press Statement, Antony J. Blinken, Secretary of State, U.S. Dept. of State, *The United States Opposes the ICC Investigation into the Palestinian Situation* (Mar. 3, 2021); Press Statement, Antony J. Blinken, Secretary of State, U.S. Dept, of State, *Warrant Applications by the International Criminal Court* (May 20, 2024).

lower standard, they ultimately seek the same injunctive relief they sought, and were denied, at the preliminary injunction stage.

*Reed* can be easily distinguished from this case. In *Reed*, the hybrid as-applied and facial claim the Supreme Court identified was the plaintiffs' challenge of the State of Washington's single, discrete application of its Public Record Act ("PRA"). The *Reed* plaintiffs contended that the PRA "violate[d] the First Amendment as applied to referendum petitions." *Reed*, 561 U.S. at 194. The Court determined that this claim had "characteristics of both" an as-applied and facial challenge because it sought to enjoin the state's enforcement of the PRA only to the extent that the statute permitted public disclosure of names the signatories of referendum petitions. *Id*. The Court's findings in *Reed* flow from the premise that, in determining whether a claim mounts a facial or an as-applied challenge, "[t]he label is not what matters." *Id*. Rather, the Court emphasized that the "important point" was "plaintiffs' claim and the relief that would follow," which would ultimately be an injunction that reached beyond plaintiffs. *Id*. In *Reed*, the requested relief would enjoin the State of Washington from publicly releasing pursuant to the PRA referendum petitions submitted to the state by plaintiffs or any other party pursuant to the PRA; it would not enjoin any other application of the PRA.

Plaintiffs' claim and the relief they seek here are not analogous to the claim and relief requested by the *Reed* plaintiffs. Here, Plaintiffs identify no similarly discrete application of Executive Order 14,203 that they are challenging that could be plausibly read to cabin their requested relief. In their Complaint and motion for a preliminary injunction, Plaintiffs define the term "Sanctions" to include the entirety of Executive Order 14,203 and designations pursuant to the order. Compl. ¶ 5. Plaintiffs' Complaint also alleges that the Sanctions, as they define them, are facially overbroad because "the 'service' prohibition's unconstitutional applications are

substantial both in absolute terms and relative to any legitimate applications." *Id.* ¶ 115. This explanation of why, in Plaintiffs' view, the sanctions are facially overbroad adopts the same standard articulated in *Moody*.

Plaintiffs' request for injunctive relief is not just an injunction barring enforcement of some specific application of Executive Order 14,203. Plaintiffs explicitly request a universal injunction because limiting the scope of sanctions enforcement to them "would not stop Defendants from targeting Plaintiffs' collaborators, counsel, associates, and invitees for 'violat[ing], attempt[ing] to violate, conspir[ing] to violate, or caus[ing] a violation' of the services prohibition. 50 U.S.C. § 1705(a)." Pl. Rply at 10–11. The relief requested does not contemplate enjoining some specific, defined application of Executive Order 14,203; rather, Plaintiffs seek universal injunctive relief. This is a traditional facial challenge which the Court correctly rejected when it concluded that there are a number of constitutional applications of Executive Order 14,203. *DAWN* Opinion at 26–27. Because Plaintiffs do nothing more than repackage their already-rejected facial challenge, if any permanent injunction is entered by this Court it should be limited to Plaintiffs.[3]

## III. *CASA* Forecloses the Universal Relief Sought by Plaintiffs

The Government maintains that Plaintiffs should not have received any relief (*see supra* Section I), but any permanent injunctive relief that Plaintiffs receive should certainly be no broader than the preliminary injunction. Plaintiffs now ask the Court for a permanent injunction that bars

---

[3] Plaintiffs also seek again to assert that Executive Order 14,203 discriminates based on viewpoint and is thus facially invalid. Pl. Supp. Br. at 9 –10. As the Government explained in its opposition to Plaintiff's motion for a preliminary injunction, Plaintiffs cannot demonstrate that these restrictions target a specific viewpoint. Dkt. No. 33 at 13–25. Executive Order 14,203 does not target "a specific premise, a perspective, a standpoint from which a variety of subjects may be discussed and considered" in restricting the provision of goods funds or services to designated persons. *Gen. Media Commc'ns, Inc. v. Cohen*, 131 F.3d 273, 281 (2d Cir. 1997).

enforcement of the Executive Order "against anyone" engaged in protected speech or association (Dkt. No. 43, at 1), which they concede would be tantamount to "universal injunctive relief." Pl. Supp. Br. 2. Such relief is at odds with *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). Indeed, the Supreme Court has "consistently rebuffed requests for relief that extended beyond the parties," *CASA*, 606 U.S. at 843, consistent with "the party-specific principles that permeate [the Court's] understanding of equity." *Id.* at 844. The question for courts "is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act; it is whether an injunction will offer complete relief *to the plaintiffs before the court*." *Id.* at 852 (emphasis in original). And "'[c]omplete relief' is not synonymous with 'universal relief.'" *Id.* at 851. Nor are parties who succeed on the merits necessarily entitled to complete relief: "to say that a court *can* award complete relief is not to say that it *should* do so. Complete relief is not a guarantee—it is the maximum a court can provide." *Id.* at 853–54 (emphasis in original); *see also id.* at 862 (Thomas, J., concurring) ("the complete-relief principle operates as a ceiling"); *Winter v. NRDC, Inc.*, 555 U.S. 7, 32 (2008) ("An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course.").

This Court has already applied these principles here. In its decision granting preliminary relief, the Court correctly declined to award relief beyond the "plaintiff-specific injunction that [this] Court entered in *Rona*" and that other courts have awarded in similar ICC-related cases. Op. 25; *see Rona v. Trump*, 797 F. Supp. 3d 278, 294 (S.D.N.Y. 2025) (enjoining defendants "from enforcing IEEPA's civil or criminal penalty provisions *against Plaintiffs* for the conduct specifically addressed in Plaintiff's Complaint and in this Opinion and Order, to the extent that such conduct is alleged to have been committed in violation of [Executive Order 14,203]" (emphasis added)); *Smith v. Trump*, 791 F. Supp. 3d 90, 100 (D. Me. 2025) ("The Government is

hereby enjoined from imposing civil or criminal penalties *on the Plaintiffs* under Executive Order 14203 and the IEEPA *based on the Plaintiffs'* provision of speech-based services to the ICC." (emphasis added)); *Open Soc'y Just. Initiative v. Trump*, 510 F. Supp. 3d 198, 217 (S.D.N.Y. 2021) ("*OSJI*") (enjoining defendants from "enforcing IEEPA's civil or criminal penalty provisions *against Plaintiffs* for conduct specifically addressed in Plaintiff's Complaint and in this Opinion and Order, to the extent that such conduct is alleged to have been committed in violation of Executive Order 13,928" (emphasis added)).

Plaintiffs' asserted injuries take the form of allegedly chilled speech and association, claiming they have stopped or curtailed certain activities out of fear of IEEPA-based penalties (*see, e.g.*, Compl. ¶¶ 4, 15, 103–06, 113), even though they have never faced such penalties. A court order barring the Government from imposing such penalties against Plaintiffs—consistent with the relief entered in *Rona*, *OSJI*, and *Smith*—would eliminate their alleged fears. Relief beyond that would be "overbroad." *City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011) ("district courts must take care to ensure that injunctive relief is not overbroad"); *see* *CASA*, 606 U.S. at 837 ("Traditionally, courts issued injunctions prohibiting executive officials from enforcing a challenged law or policy only against the plaintiffs in the lawsuit."). Even when a "court concludes that the Executive Branch has acted unlawfully, the answer is not for the court to exceed its power, too." *CASA*, 606 U.S. at 861.

Plaintiffs' position is that an injunction tailored to them would be insufficient because "countless third parties" with whom they wish to collaborate would remain "chilled." Pl. Supp. Br. 2–3. The plaintiff-states in *CASA* took a similar position, asserting that their harms "cannot be remedied without a blanket ban on the enforcement of the Executive Order" and that a "'patchwork injunction'" "would prove unworkable." 606 U.S. at 853. The Supreme Court, however, stayed

the universal injunctions entered by three district courts to the extent they were "broader than necessary to provide complete relief to each plaintiff with standing to sue" and directed the lower courts to "ensure that, with respect to each plaintiff, the injunctions comport with this rule." *Id.* at 861. After *CASA*, courts of appeals in First Amendment cases have refused to allow the complete-relief principle to become "a free pass around *CASA*." *Dickinson v. Trump*, 174 F.4th 634, 645–46 (9th Cir. 2026) (concluding that the district court's injunction "improperly grants relief not only to the five named plaintiffs but to anyone protesting or reporting at the Portland ICE facility" and rejecting the lower court's justification of "the injunction's breadth as necessary to provide complete relief to the named plaintiffs"); *L.A. Press Club v. Noem*, 171 F.4th 1179, 1190–91 (9th Cir. 2026) (vacating "sweeping" injunction in First Amendment case as overbroad because its scope must be "'no broader than necessary to provide complete relief to the named plaintiffs' and members of organizational plaintiffs").

To be sure, party-specific injunctions may "'advantag[e] nonparties,'" but they may do so "only incidentally." *CASA*, 606 U.S. at 851. Barring enforcement of Executive Order 14,203 and the regulations and designations made thereunder "*against anyone* for engaging in First Amendment-protected speech and association" (Dkt. No. 43, at 1 (emphasis added)) would hardly be incidental. It would extend protection to "*everyone* potentially affected by an allegedly unlawful act"—the very measure of relief *CASA* rejected in favor of "complete relief *to the plaintiffs before the court*." 606 U.S. at 852 (emphasis in original); *cf. L.A. Press Club*, 171 F.4th at 1191 (vacating injunctive provisions that protected "any person" and nonparty "'members of the press, legal observers, and protesters'" because this relief was not "necessary to give relief to Plaintiffs").

## IV. Plaintiffs' APA Claim Cannot Form the Basis for Broader Relief

Even if the Court reaches the APA claim (as Plaintiffs request), that claim fails as a matter of law and should not form the basis for any relief for the reasons set forth in the Government's brief opposing the preliminary injunction, including that there is no final agency action. Dkt. No. 33, at 20–23. Indeed, this Court has already noted "doubts about the justiciability" of this claim and declined to reach it in part for that reason. Op. 17 n.3 (citing cases).[4]

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' request for a permanent injunction. If the Court grants a permanent injunction, the relief awarded should be no broader than the relief awarded in the Court's preliminary injunction.

---

[4] Though the district court in *Smith v. Trump* recently denied a motion to dismiss an APA claim (Pl. Supp. Br. 15), the court there never addressed the lack of a final agency action and instead focused on whether "Plaintiffs' asserted injury" was sufficiently "ripe[]." *See* *Smith v. Trump*, No. 25-CV-158-JAW, 2026 WL 2905302, at *11 (D. Me. Sept. 28, 2026); *see* *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1274 n.6 (D.C. Cir. 2018) ("We note a subtle but important distinction between prudential doctrines such as ripeness, where the presence of constitutional claims may favor judicial review, and the APA's statutory prerequisite of final agency action, without which no cause of action or claim exists. . . . Unlike reviewability doctrines developed by courts, final agency action is a statutory requirement set by Congress.").

Dated: New York, New York
November 2, 2026

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
*Attorney for Defendants*

By: */s/Kamika S. Shaw*
DANIELLE J. MARRYSHOW
MARK OSMOND
KAMIKA S. SHAW
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2689/2713/2768

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that this memorandum complies with the Court's October 20, 2026 Order, Dkt. No. 42, imposing a 5,000-word limit on this submission. As measured by the word processing system used to prepare it, this memorandum contains 3,262 words.

*/s/Kamika S. Shaw*

Assistant United States Attorney