UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEMOCRACY FOR THE ARAB WORLD NOW, INC., d/b/a DAWN, TAXPAYER ALLIANCE AGAINST GENOCIDE, TARIK KANAANA, and WILLIAM DOARES,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP *et al.*,<br><br>*Defendants*. | **No. 26-cv-5957(JMF)**<br>Rel. 26-cv-5305(JMF) |

# PLAINTIFFS' REPLY REGARDING THE SCOPE OF PERMANENT INJUNCTIVE RELIEF AND REQUEST, IN THE ALTERNATIVE, TO ADJUDICATE PLAINTIFFS' APA CLAIM

Joseph Pace
J. PACE LAW, PLLC
30 Wall Street, 8th Floor
New York, NY 10005
(917) 336-3948
jpace@jpacelaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... i

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. THE COURT MAY UNIVERSALLY ENJOIN THE RESTRICTIONS BECAUSE THEY ARE FACIALLY INVALID ..... 2

II. A UNIVERSAL INJUNCTION IS NECESSARY TO REMEDY PLAINTIFFS' ONGOING FIRST AMENDMENT INJURIES ..... 5

III. IN THE ALTERNATIVE, THE COURT SHOULD SET ASIDE THE RESTRICTIONS VIA THE APA ..... 8

CONCLUSION ..... 9

# TABLE OF AUTHORITIES

**Cases**

**Page(s)**

*ACLU v. Reno*,
31 F. Supp. 2d 473 (E.D. Pa. 1999) ....................4

*Ashcroft v. ACLU*,
542 U.S. 656 (2004) ....................4

*Bach v. Pataki*,
408 F.3d 75 (2d Cir. 2005) ....................5

*Bantam Books, Inc. v. Sullivan*,
372 U.S. 58 (1963) ....................7

*Ctr. for Taxpayer Rts. v. IRS*,
190 F.4th 990 (D.C. Cir. 2026) ....................6

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
868 F.3d 104 (2d Cir. 2017) ....................7

*Coal. for Indep. Tech. Rsch. v. Rubio*,
836 F. Supp. 3d 215 (D.D.C. 2026) ....................6

*Dickinson v. Trump*,
174 F.4th 634 (9th Cir. 2026) ....................5

*Doe v. Trump*,
157 F.4th 36 (1st Cir. 2025), *cert. denied*, 146 S. Ct. 2810 (2026) ....................7,8

*In re Dow Jones & Co.*,
842 F.2d 603 (2d Cir. 1988) ....................7

*Eisenstadt v. Baird*,
405 U.S. 438 (1972) ....................4

*Fabulous Assocs., Inc. v. Pa. Pub. Util. Comm'n*,
896 F.2d 780 (3d Cir. 1990) ....................6

*Farrell v. Burke*,
449 F.3d 470 (2d Cir. 2006) ....................4

*Griffin v. HM Fla.-ORL, LLC*,
144 S. Ct. 1 (2023) ....................4

*Knight First Amendment Inst. at Columbia Univ. v. Trump*,
302 F. Supp. 3d 541 (S.D.N.Y. 2018) ....................6

*L.A. Press Club v. Noem*,
171 F.4th 1179 (9th Cir. 2026) ....................5

*Open Soc'y Just. Initiative v. Trump*,
510 F. Supp. 3d 198 (S.D.N.Y. 2021) ....................8

*PEN Am. Ctr., Inc. v. Trump*,
448 F. Supp. 3d 309 (S.D.N.Y. 2020) ....................6

*Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*,
490 U.S. 477 (1989)....................5

*Rona v. Trump*,
797 F. Supp. 3d 278 (S.D.N.Y. 2025) ....................8

*Sec'y of State of Md. v. Joseph H. Munson Co.*,
467 U.S. 947 (1984)....................3

*Shalala v. Ill. Council on Long Term Care, Inc.*,
529 U.S. 1 (2000)....................5

*Smith v. Trump*,
791 F. Supp. 3d 90 (D. Me. 2025) ....................8

*Smith v. Trump*,
2026 U.S. Dist. LEXIS 219727 (D. Me. Sept. 28, 2026) ....................8,9

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)....................2

*Stanford Daily Publ'g Corp. v. Rubio*,
__ F. Supp. 3d __, 2026 U.S. Dist. LEXIS 195423 (N.D. Cal. Aug. 28, 2026) ....................3

*Tashjian v. Republican Party of Conn.*,
479 U.S. 208 (1986)....................7

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025).................... *passim*

*United States v. Hansen*,
599 U.S. 762 (2023)....................4

*United States v. Playboy Ent. Grp., Inc.*,
529 U.S. 803 (2000)....................4

*Virginia v. Hicks*,
539 U.S. 113 (2003) ........................................ 3

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
425 U.S. 748 (1976) ........................................ 6,7

*Welty v. Dunaway*,
__ F.4th __, 2026 U.S. App. LEXIS 29403 (6th Cir. Sept. 24, 2026) ........................................ 3

**Statutes**

5 U.S.C. § 706(2) ........................................ 8

15 U.S.C. § 1681u(a) ........................................ 3

50 U.S.C. § 1702(b) ........................................ 8

**Executive Orders**

Exec. Order No. 14203, 90 Fed. Reg. 9369 (Feb. 12, 2025) ........................................ 2

# INTRODUCTION

Despite multiple opportunities, Defendants still cannot conjure a single application of the Restrictions[1]—against *anyone*—that would survive strict scrutiny. That alone entitles Plaintiffs to a universal injunction. First Amendment doctrine has long permitted injured plaintiffs to seek facial invalidation of speech restrictions based on their unconstitutional applications to nonparties, and nothing in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), displaces the Court's authority to categorically halt enforcement of restrictions upon a finding of facial invalidity.

Even absent a finding of facial invalidity, *CASA* permits courts to enjoin a law's enforcement against nonparties where—as here—such relief is necessary to remedy the plaintiffs' own injuries. Defendants do not dispute Plaintiffs' detailed factual showing that a party-limited injunction provides limited relief. Allowing Plaintiffs to file an ICC submission means little if the nonparty researchers, consultants, and lawyers on whom Plaintiffs depend to create the submission face possible prosecution for aiding Plaintiffs' efforts. An order allowing DAWN to organize workshops with the designated parties ("the SDNs") is hollow if prospective participants are chilled from attending. And an order that otherwise leaves the Restrictions in place does nothing to restore Plaintiffs' access to the invaluable research and advocacy ideas that have been lost due to the cessation of independent collaborations between nonparties and the SDNs.

Defendants make no attempt to explain how anything short of a universal injunction could remedy these ongoing injuries, nor do they plausibly argue that expansive relief would impair a governmental interest. The Court should therefore universally enjoin the Restrictions or, alternatively, reach Plaintiffs' APA claim and set the Restrictions aside.

---

[1] "Restrictions" refers throughout to the Sanctions' "services" prohibition as applied to First Amendment-protected speech and association.

# ARGUMENT

## I. THE COURT MAY UNIVERSALLY ENJOIN THE RESTRICTIONS BECAUSE THEY ARE FACIALLY INVALID

Defendants dutifully check their appellate-preservation boxes, but make few arguments beyond those this Court has already thrice rejected. Their new contentions lack merit.

Thus, Defendants claim (at 3) that counterspeech has failed to deter the ICC from investigating U.S. and Israeli nationals. But their paltry showing—two press releases over a four-year period—only underscores how *little* counterspeech Defendants attempted before resorting to censorship. Defendants' argument also misses the point entirely. Defendants cannot demonstrate that silencing *U.S. persons* will succeed where official counterspeech failed. Prelim. Inj. Memo. 27-28 & n.9, ECF No. 29. And Defendants' inability to persuade the ICC does not give them license to muzzle those on the opposite side of the debate. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 578-79 (2011) ("[A] State's failure to persuade does not allow it to hamstring the opposition. The State may not burden the speech of others in order to tilt public debate in a preferred direction.").

Defendants next claim (at 5) that Plaintiffs have failed to "identify [a] . . . discrete application" of the Sanctions that "could be plausibly read to cabin their requested relief." That is false. Not only have Plaintiffs repeatedly explained that they seek only to enjoin the Sanctions' enforcement against "expressive, speech-based services" that take the form of "protected speech and association," they have identified five concrete examples of protected activities encompassed by the proposed injunction. Pls.' Supp. Memo. 1, 15-16, ECF No. 44.[2]

[2] To the extent Defendants mean to suggest that an injunction barring enforcement against "protected speech and association" is vague or unmanageable, they are mistaken. *See Stanford Daily Publishing Corp. v. Rubio*, 2026 U.S. Dist. LEXIS 195423, at *103 n.353 (N.D. Cal. Aug. 28, 2026) (rejecting Government's contention that injunction barring enforcement of certain immigration laws on the basis of "protected speech" was unworkable). As the court explained in

Defendants' final contention—that *CASA* bars universal relief even where a speech restriction is facially unconstitutional—fares no better. It is well-settled that an injured plaintiff may bring a First Amendment overbreadth challenge to vindicate nonparties' rights, *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956-57 & n.7 (1984), and that an order "suspending *all enforcement*" of a facially overbroad law is warranted to protect "an uninhibited marketplace of ideas" and to "reduce the social costs caused by the withholding of protected speech" by regulated parties not before the court. *Virginia v. Hicks*, 539 U.S. 113, 119 (2003) (emphasis added).

As the Sixth Circuit recently explained, "nothing in *CASA* addresses, let alone forecloses, the propriety of a broad injunction . . . in the First Amendment overbreadth context." *Welty v. Dunaway*, __F.4th__, 2026 U.S. App. LEXIS 29403, at *73 (6th Cir. Sept. 24, 2026). *CASA* did not overrule the Supreme Court's precedents affirming nationwide injunctions against facially unconstitutional speech restrictions. *See, e.g.*, *Ashcroft v. ACLU*, 542 U.S. 656, 671 (2004); *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 827 (2000). Nor did *CASA* purport to alter "the availability of third-party standing," *CASA*, 606 U.S. at 866 (Alito, J., concurring), which is the doctrinal foundation of First Amendment overbreadth challenges. *See* *United States v. Hansen*, 599 U.S. 762, 769 (2023) (overbreadth claims allow a plaintiff to "assert the constitutional rights of third parties"); *Eisenstadt v. Baird*, 405 U.S. 438, 445 n.5 (1972) ("in First Amendment cases we have relaxed our rules of standing without regard to the relationship between the litigant and those whose rights he seeks to assert precisely because application of those rules would have an

---

*Stanford Daily Publishing Corp.*, a host of "national security statutes demarcate 'protected speech' as the line where a statute's reach ends." *Id.*; *see, e.g.*, 15 U.S.C. § 1681u(a) ("investigation of a United States person" may not be "conducted solely upon the basis of activities protected by the first amendment"). If "protected speech" is a workable boundary in a statute, it is surely workable in an injunctive decree.

intolerable, inhibitory effect on freedom of speech"); *see also* *Farrell v. Burke*, 449 F.3d 470, 498 (2d Cir. 2006) ("Overbreadth challenges are . . . an exception to the general rule against third-party standing."). Moreover, two members of the *CASA* majority recognized elsewhere that First Amendment overbreadth challenges warrant different treatment than ordinary requests for universal relief. *Griffin v. HM Florida-ORL, LLC*, 144 S. Ct. 1 (2023) (statement of Kavanaugh, J., joined by Barrett, J., respecting denial of stay) (explaining that a case involving a universal injunction of a facially invalid speech restriction was an unsuitable vehicle for the Supreme Court to assess lower courts' ability to issue nationwide injunctions because "a First Amendment overbreadth challenge . . . presents its own doctrinal complexities about the scope of relief").

Defendants would have this Court believe that *CASA* upended a half-century of First Amendment jurisprudence by implication. But the Supreme Court "does not normally overturn, or so dramatically limit, earlier authority *sub silentio*," *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000), and lower courts may not treat its precedents as overruled by implication, even where they "appear[] to rest on reasons rejected in some other line of decisions." *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989); *Bach v. Pataki*, 408 F.3d 75, 86 (2d Cir. 2005).[3]

## II. A UNIVERSAL INJUNCTION IS NECESSARY TO REMEDY PLAINTIFFS' ONGOING FIRST AMENDMENT INJURIES

Even if the Court declines to enjoin the Restrictions wholesale on facial-invalidity grounds, *CASA* permits universal relief to remedy Plaintiffs' own injuries. Pls.' Supp. Memo. 10-11.

---

[3] Defendants' reliance (at 9) on *Dickinson v. Trump*, 174 F.4th 634 (9th Cir. 2026), and *L.A. Press Club v. Noem*, 171 F.4th 1179 (9th Cir. 2026), is misplaced, since neither case involved a facial challenge.

Defendants do not dispute Plaintiffs' detailed averments explaining why a party-limited injunction fails to provide meaningful, let alone complete, relief. They do not contest that the continued threat of IEEPA penalties has deterred otherwise willing researchers, consultants, and lawyers from assisting Plaintiffs with their Article 15 submissions; that those chilled collaborators are essential to Plaintiffs' ICC-facing work; that DAWN cannot organize conferences with the SDNs as long as the Restrictions are enforceable against DAWN's invitees; that the Restrictions have increased the cost of interacting with the SDNs in workshop settings because others are chilled from organizing such workshops, thus requiring Plaintiffs to divert their own resources to put on events that would otherwise have been organized by other groups; and that the risk of IEEPA penalties against nonparties is depriving Plaintiffs of invaluable research and advocacy ideas that would be generated through independent collaborations between the SDNs and nonparties.

These are textbook injuries to Plaintiffs' First Amendment rights to receive information and freely associate. *See, e.g.*, *Coal. for Indep. Tech. Rsch. v. Rubio*, 836 F. Supp. 3d 215, 246 (D.D.C. 2026) (policy that chilled others from "contribut[ing] to [plaintiff's] reports" and "participat[ing] in the convenings and candid exchanges from which [plaintiff's] public work emerges" violates plaintiff's right to association); *PEN Am. Ctr., Inc. v. Trump*, 448 F. Supp. 3d 309, 323 (S.D.N.Y. 2020) ("An organization's right to receive information is impaired when it is unable to hear from a speaker who is willing to speak, but who has been obstructed by government action."); *Fabulous Assocs., Inc. v. Pa. Pub. Util. Comm'n*, 896 F.2d 780, 785-87 (3d Cir. 1990) (law that increases the cost of receiving speech violates the First Amendment); *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 302 F. Supp. 3d 541, 563 (S.D.N.Y. 2018) (finding

that nonprofit suffered a receipt-of-information injury when President Trump blocked Twitter users and impeded the flow of online conversations that the nonprofit followed).[4]

Defendants do not explain how anything short of a universal injunction could remedy these injuries. *Doe v. Trump*, 157 F.4th 36, 81-82 (1st Cir. 2025) (while government defendants "need not write the injunction themselves," they must at least explain why "a narrower injunction was available to provide complete relief"). They suggest in passing (at 9) that the requested injunction violates *CASA* because its benefits to nonparties would be more than "incidental." But any benefits are the necessary and unavoidable byproduct of an order that fully vindicates Plaintiffs' First Amendment rights—the very definition of "incidental." Nor is there anything novel about a plaintiff vindicating his or her First Amendment rights by restraining a law's enforcement against nonparties. The Supreme Court has long recognized that unregulated parties who wish to receive speech may challenge restrictions imposed on the speakers themselves. *See, e.g.*, *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756-57 (1976) ("[W]here a speaker exists . . . the protection afforded is to the communication, to its source and to its recipients both," and the "reciprocal right to receive" may be asserted by the speaker or the recipient); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 n.6 (1963) (publisher has standing to challenge law regulating book distributors); *In re Application of Dow Jones & Co.*, 842 F.2d 603, 607 (2d Cir. 1988) (news organizations have standing to challenge gag order barring counsel and defendants in criminal action from speaking). The same principle applies to associational rights. *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 216 (1986) (permitting political party

[4] It is no answer that these harms flow from the independent choices of third parties, since the chilling effect is an entirely predictable, ongoing consequence of the Restrictions. *Ctr. for Taxpayer Rts. v. IRS*, 190 F.4th 990, 1001 (D.C. Cir. 2026) (party may seek redress for an "injury . . . premised on the predictable effect of Government action on the decisions of third parties").

to challenge law excluding independent voters from its primaries because law limited the party's "associational opportunities"); *Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 110-11 (2d Cir. 2017) (granting advocacy group's First Amendment challenge to ordinance barring roadside solicitation of work because the ordinance made it more difficult to "meet[] with and organiz[e]" affected laborers and forced the group to divert resources to reach laborers who were dispersed by the ordinance).

Defendants' remaining arguments are readily dispensed with. They falsely claim (at 7-8) that *Rona v. Trump*, 797 F. Supp. 3d 278 (S.D.N.Y. 2025), *Smith v. Trump*, 791 F. Supp. 3d 90 (D. Me. 2025),and *Open Soc'y Just. Initivaite v. Trump ("OSJI")*, 510 F. Supp. 3d 198 (S.D.N.Y. 2021), already applied *CASA* in denying broader relief. But none of those decisions referenced, let alone applied, *CASA*; nor did the plaintiffs in those cases contend that a broader injunction was necessary to vindicate *their* constitutional rights. Defendants also contend (at 8) that the State plaintiffs in *CASA* unsuccessfully pressed similar arguments to those advanced here. But *CASA* did not reject the State plaintiffs' arguments about the need for a universal injunction—it declined to consider those arguments in the first instance and remanded to the lower courts, 606 U.S. at 854, which subsequently *reinstated* the universal injunction. *Doe*, 157 F.4th at 43, *cert. denied*, 146 S. Ct. 2810 (2026).

### III. IN THE ALTERNATIVE, THE COURT SHOULD SET ASIDE THE RESTRICTIONS VIA THE APA

If the Court finds that *CASA* forecloses universal injunctive relief, it should reach Plaintiffs' APA claim and set aside the Restrictions. Defendants concede that *CASA* preserves the Court's power to vacate the Restrictions if they are "contrary to constitutional right" or "in excess of statutory jurisdiction." 5 U.S.C. § 706(2)(B)-(C).

Defendants argue that *Smith v. Trump*, 2026 U.S. Dist. LEXIS 219727 (D. Me. Sept. 28, 2026), did not resolve the "justiciability" concerns surrounding the APA claim because it did not address the existence of final agency action. The latter part is true—but only because the Government never disputed finality in *Smith*. *See* Mot. to Dismiss, *Smith v. Trump*, No. 1:25-cv-00158(JAW) (D. Me. Sept. 4, 2025), ECF No. 34. The Government's implicit concession in *Smith* that OFAC has definitively interpreted the 50 U.S.C. § 1702(b) exceptions further undermines Defendants' insistence here that there is no final agency action to review. Prelim. Inj. Reply 11-12. Moreover, the justiciability concerns in *OSJI* and *Smith* involved ripeness, Opinion 17 n.3, ECF No. 40, not lack of final agency action. As Defendants' opposition helpfully explains, those are different concepts. Defs.' Opp. 10 n.4. The ripeness concerns have now been resolved, Prelim. Inj. Reply 12-14; *Smith*, 2026 U.S. Dist. LEXIS 219727, at *20-21, 28-31, 35-36 (D. Me. Sept. 28, 2026), and Defendants offer no other reason why the Court should refrain from considering the APA claim.

## CONCLUSION

For the foregoing reasons, the Court should universally enjoin the Restrictions or, in the alternative, reach and grant Plaintiffs' claim for relief under the APA.

Dated: November 8, 2026
New York, NY

Respectfully submitted,

/S/ Joseph Pace
J. PACE LAW, PLLC
30 Wall Street, 8th Floor
New York, NY 10005
(917) 336-3948
jpace@jpacelaw.com

*Counsel for Plaintiffs*

**CERTIFICATE OF COMPLIANCE**

I, Joseph Pace, hereby certify that the foregoing memorandum of law complies with the word count limitation set forth in the Court's October 21, 2026 Order, ECF No. 42, in that it contains 2,380 words excluding the caption, table of contents, table of authorities, signature block, and required certificates.

/S/ Joseph Pace